IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
File No. 1:17-cv-477-TDS-JEP

| | |
|---|---|
| DARRYL HOWARD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE CITY OF DURHAM, *et al.* )<br>)<br>Defendants. )<br>_____ ) | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO ADMIT PARDON AND SUMMARY OF ORDER ON DNA MOTION** |

Plaintiff Darryl Howard was wrongfully convicted of the Washington murders in Durham County on March 31, 1995. On August 31, 2016, Durham County Senior Resident Superior Court Judge Orlando Hudson granted Howard's motion for a new trial pursuant to N.C. Gen. Stat. § 15A-270 ("DNA Motion") based upon favorable post-conviction DNA testing. In particular, post-conviction testing of DNA from Doris Washington's rape kit, which was unavailable at trial, conclusively excluded Howard as the source of the DNA. A search of the FBI's national DNA database identified convicted-felon Jermeck Jones—a man with no connection to Darryl Howard—as a match for the DNA from Washington's rape kit. Doc. 87-9 (Clement Report) at 3, 6.[1] Consistent with pretrial DNA testing, post-conviction DNA testing from Nishonda

---

[1] All page numbers in citations to previously docketed material—except for previously docketed transcripts—refer to ECF page numbers. Page numbers in citations to previously docketed transcripts refer to the page numbers of the original transcript, not the ECF page numbers.

1

Washington's rape kit also conclusively excluded Howard as the source of the semen found in the 13-year-old's vagina and anus and matched a second, unidentified man. *Id.*

After an evidentiary hearing, the court concluded that the post-conviction DNA results were "favorable" under § 15A-270 because Howard would have been acquitted at trial had the post-conviction DNA results been known then.[2] Doc. 87-3 (Vacatur Order) at 25. The court vacated Howard's convictions, released him from prison, and granted him a new trial. *Id.* at 25-26. On September 2, 2016, the State dismissed the charges against Howard, citing insufficient evidence to prosecute. Ex. 1 (Dismissal Orders).

On April 30, 2021, Governor Roy Cooper granted Howard's Petition for a Pardon of Innocence for the Washington murders and arson. Ex. 2 (Pardon).[3] The Governor's announcement of the Pardon stated, "Howard's pardon application was thoroughly reviewed by the Office of Executive Clemency, the Office of the General Counsel and the Governor." Ex. 3 (Press Release). Governor Cooper stated, "It is important to continue our efforts to reform the justice system and to acknowledge wrongful convictions[.] After carefully reviewing Darryl Anthony Howard's case, I am granting him this Pardon of Innocence." *Id.*

---

[2] In addition to the DNA evidence excluding Howard and implicating Jermeck Jones and another unidentified man, the court also considered additional evidence implicating Jermeck Jones. For example, video evidence was presented during the hearing showing Jones making a series of false and incriminating statements relating to the Washington crimes while in police custody. *See* Doc. 87-3 (Vacatur Order) at 18–21. Jones was called to testify at the hearing, but refused to testify, invoking the Fifth Amendment privilege.
[3] The Durham County District Attorney's Office—the same office that prosecuted Darryl Howard for the Washington crimes in 1995—did not oppose his Petition. *See* Ex. 4 (Letter from District Attorney Satana Deberry to Governor Cooper).

2

By issuing Howard a Pardon of Innocence, Governor Cooper has conclusively found him innocent, as is his prerogative under the North Carolina Constitution. *See, e.g., State v. Clifton*, 125 N.C. App. 471, 481, 481 S.E.2d 393, 399 (1997) (describing how the governor has "the exclusive prerogative to issue pardons") (citing N.C. Const. art. III, § 5(6)). Legally, the Governor's Pardon of Innocence operates equally to a determination of innocence through the North Carolina Innocence Inquiry Commission. *See* N.C. Gen. Stat. § 148-82 (providing compensation for wrongful incarceration following issuance of a pardon of innocence or determination of innocence through the Innocence Commission process); N.C. Gen. Stat. § 15A-149 (permitting persons who have been granted pardons of innocence to seek expungement from all official records any entries related to that person's apprehension, charge, or trial).

Governor Cooper's Pardon of Innocence is admissible because it is highly relevant, it is necessary to present the full procedural account of the criminal case to the jury, and, in the alternative, it can be accepted under judicial notice. In addition, the jury should be presented with a summary of the Order Granting the DNA Motion in order to complete the procedural story of the criminal case and to counter-balance the knowledge of Howard's initial conviction.

## ARGUMENT

I. **The Governor's Pardon of Innocence Is Admissible and Can Be Accepted Under Judicial Notice.**

The Governor's Pardon of Innocence, like other evidence of innocence, is squarely relevant to Plaintiff's claims. Although innocence is not a required element of the claims,

it provides critical factual context for evaluating the evidence of the alleged misconduct by Defendants. As the Second Circuit noted in describing the evidence of innocence admitted in a § 1983 wrongful conviction trial: "Plaintiffs were not required to prove their innocence to win on their claims at trial. However, the evidence of their innocence provides an important backdrop for their claims at trial." *Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) (affirming verdict in favor of plaintiffs); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 713 (7th Cir. 2013) (describing evidence of innocence admitted at § 1983 wrongful conviction trial).

Innocence is relevant for several reasons. First, the fact of innocence is often compelling circumstantial evidence making it more likely that the police engaged in misconduct. For example, innocence can prove circumstantially that details in a falsified statement came from police and did not originate with the witness giving the false testimony. *See Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (holding evidence of plaintiff's innocence "tended to prove that [the plaintiff] did not kill [the victim], which . . . rebut[s] [the witness's] testimony that [the plaintiff] confessed to the murder and increas[es] the likelihood that [the defendants] instead fed [the witness] details about the case); *Halsey v. Pfeiffer*, 750 F.3d 273, 306 n.31 (3d Cir. 2014) (noting innocence supported claim of coerced confession because "the circumstance that [the plaintiff] was innocent proves he could not have known certain details about the crime that nevertheless were included in his confession"); *White v. Smith*, 696 F.3d 740, 752, 756 (8th Cir. 2012) (noting innocence of plaintiff and his alleged co-conspirators

4

supported his fabrication claim, because "none of the suspects possessed any independent knowledge of facts that were consistent with the evidence found at the crime scene"); *see also Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010) ("The DNA evidence that cleared Good and secured his freedom also removes all doubt as to the inaccuracy of [the] identification" used to obtain his conviction and is circumstantial evidence of officer misconduct); *Costanich v. Dept. of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (holding innocence is a "circumstantial method[] of proving deliberate falsification.").

This ground for relevance is particularly applicable here, where Defendant Dowdy admitted that there were only two possible explanations for how witness Angela Southerland's statement included nonpublic details about the crime: either she witnessed Darryl Howard commit the crime, or Dowdy improperly fed that information to her. Doc. 87-2 (Dowdy Dep. Excerpts) at 339–40. Thus, evidence of Darryl Howard's innocence is powerful evidence that Dowdy fabricated Southerland's statement. *See* Doc. 119 (Memorandum Opinion and Order) at 60; Doc. 87-2 at 337–38. Similarly, evidence of Howard's innocence is powerful evidence that Dowdy fabricated an imaginary "boyfriend" for Nishonda Washington, in order to negate the clearly exculpatory nature of the pretrial exclusion of Howard as the source of semen found in the 13-year-old's vagina and anus. *See* Doc. 87-2 at 170-74.

Evidence of innocence is also undoubtedly relevant to damages, because a jury can conclude that a plaintiff who was wrongfully imprisoned through no fault of his own

suffered a more severe deprivation than a plaintiff who committed a crime but was released on a technicality. *See Parish v. City of Elkhart*, 702 F.3d 997, 1003 (7th Cir. 2012) (reversing damages verdict for erroneous exclusion of "evidence relating to [the plaintiff's] innocence . . . [which was] critical to the damages issue"); *Ayers*, 773 F.3d at 169; *Jones v. Cannizzaro*, No. CV 18-503, 2021 WL 218040, at *4 (E.D. La. Jan. 21, 2021) (holding evidence of innocence is admissible because "the jury award for a factually innocent man will be much higher than the award for a factually guilty one"). Plaintiffs' Pardon of Innocence thus easily clears the "low bar of relevancy." *United States v. Cloud*, 680 F.3d 396, 402 (4th Cir. 2012).

In addition, evidence of innocence is crucial to remove the prejudice and stigma caused by the prior conviction and the purported evidence of guilt. Under normal circumstances, the fact that Plaintiff had been convicted of the Washington murders would be inadmissible at trial, given that the conviction has been vacated, all charges dismissed, and he has received a Pardon of Innocence. The conviction is not admissible under Rule 803(22), which permits the admission of certain "final judgment[s] of conviction," because where "criminal convictions were *vacated*… there is no valid and final judgment." *Gilliam v. Sealey*, 932 F.3d 216, 232-33 (4th Cir. 2019). Nor would it be admissible for impeachment for the same reasons. *See, e.g.,* Fed. R. Evid. 609 (c)(2) ("Evidence of a conviction is not admissible if … the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence."); *see also* Fed. R. Evid. 609(c) Advisory Committee's Notes to subdivision (c) (1972)

("Pardons based on innocence have the effect, of course, or nullifying the conviction *ab initio*.").

Obviously, in a case *about* the wrongful conviction, the jury must learn that Plaintiff was convicted. But the concern that the jury will draw an impermissible inference from the prior jury verdict remains. A district court addressing whether to admit evidence of a § 1983 plaintiff's pardon described exactly this reason for its admission:

> It was also proper to admit evidence about the pardon. The issue in this case was not, as defendants point out, whether Newsome was guilty or innocent of the crime. But that is what it would have become if the fact of Newsome's innocence . . . had been kept from the jury. Excluding that evidence would have been highly prejudicial to Newsome. It would have invited the jurors to draw the impermissible inference that he was actually guilty, and, thus, absolve defendants of any misconduct.

*Newsome v. McCabe*, No. 96 C 7680, 2002 WL 548725, at *6 (N.D. Ill. Apr. 4, 2002), *aff'd*, 319 F.3d 301 (7th Cir. 2003); *see also Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 746 (N.D. Ill. 2015) (in § 1983 *Brady* suit, holding certificate of innocence is relevant and admissible "to neutraliz[e] potential unfair prejudice to the plaintiff").

For the same reason, the Seventh Circuit found that the district court abused its discretion by excluding evidence of innocence under Rule 403, necessitating a retrial. When "[s]ignificant testimony as to [the plaintiff's] guilt of the crime, and particularly the testimony of eyewitnesses identifying him, was admitted," but evidence of his innocence was not, "the deck was effectively stacked against [the plaintiff]." *Parish*, 702 F.3d at 999.

7

Judge Boyle very recently addressed precisely this issue in *Tarlton v. Sealey*, No. 5:15-CV-451-BO, 2021 WL 1148951 (E.D.N.C. Mar. 25, 2021). In that case, the plaintiffs had been convicted of murder in 1984, had their convictions overturned on motions for appropriate relief in 2014, and received pardons of innocence from the Governor in 2015. *See Gilliam v. Sealey*, 932 F.3d 216, 222, 225–26 (4th Cir. 2019) (describing plaintiffs as "exonerated" based on this record). In pretrial motions, the parties disputed whether evidence of the pardons could be admitted. *Tarlton*, 2021 WL 1148951, at *1. The court held that the pardons were plainly relevant: "The pardons of innocence are as relevant to this action as the criminal judgments of conviction under which [the plaintiffs] were sentenced." *Id.* For the same reason, Plaintiff's Pardon of Innocence from Governor Cooper is relevant and admissible here.

The pardon is also admissible as a statement by a public agency concerning the factual findings of a legally authorized investigation under Rule 803(8). *See, e.g., Sanford v. Russell*, No. 17-13062, 2021 WL 1208888, at *3–4 (E.D. Mich. Mar. 31, 2021) (in § 1983 wrongful conviction suit, recognizing statement made on behalf of State of Michigan recognizing that plaintiff did not commit the crime was relevant and admissible as a statement by a public agency under Fed. R. Evid. 803(8)); *see also United States v. Wood*, 741 F.3d 417, 425–26 (4th Cir. 2013) (holding pre-sentence report admissible under Rule 803(8) in civil commitment proceeding); *United States v. Vidacak*, 553 F.3d 344, 348–51 (4th Cir. 2009) (holding records seized from the headquarters of hostile Serbian Army VRS "clearly fall within the hearsay exception of Fed. R. Evid. 803(8)").

In addition, the Court can take judicial notice of Plaintiff's Pardon of Innocence pursuant to Rule 201. Rule 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "There is no genuine dispute that the pardons of innocence are facts generally known within this Court's territorial jurisdiction or that the fact of their issuance can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Tarlton*, 2021 WL 1148951, at *1. The court in *Tarlton* took judicial notice of the plaintiffs' pardons of innocence because the "pardons of innocence speak for themselves and are properly the subject of judicial notice." *Id.* at *2.

Defendants may argue that admitting Plaintiff's Pardon of Innocence will prejudice their case. But there is nothing *unfair* about prejudice that results only from the probative value of the evidence: "*[u]nfair* prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence. Indeed, our adversarial system depends on opposing parties offering evidence that will strengthen their respective positions and damage that of their opponents." *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) (internal citation and quotation marks omitted). Furthermore, "[a]ny concern about prejudice or confusion of the issues can be addressed in the jury's instructions." *Tarlton*, 2021 WL 1148951, at *2; *see also Newsome*, 2002 WL 548725, at *6 (finding admission of pardon was not "prejudicial to

9

defendants" because "any temptation the jurors may have had to impose liability without fault was vitiated by the jury instructions").

Therefore, Plaintiff's Pardon of Innocence should be admitted as evidence or the Court should take judicial notice of the Pardon.

## II. A Summary of the Order Granting the DNA Motion Is Admissible.

Like the Pardon of Innocence to Plaintiff, the Order Granting Plaintiff's DNA Motion is "as relevant to this action as the criminal judgments of conviction under which [Plaintiff was] sentenced." *Tarlton*, 2021 WL 1148951, at *1. Because the jury will learn that Plaintiff was found guilty in 1995, it must also learn that his convictions were overturned in 2016. Otherwise, "the deck [would be] effectively stacked against" Plaintiff. *Parish*, 702 F.3d at 999.

Plaintiff is not seeking to admit all of the court's findings in the Order Granting the DNA Motion because, generally, judicial findings of fact are inadmissible hearsay. *See Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993) (holding judicial findings are not public records under Rule 803(8)). However, the jury should be presented with a summary of the Order so that it has a balanced understanding of the criminal case.

*Cardinal v. Buchnoff*, No. 06CV0072-MMA BLM, 2010 WL 3339509 (S.D. Cal. Aug. 23, 2010), is instructive. In that case, after the plaintiff was arrested, with force, a judge dismissed the charge against him for lack of probable cause. *Id.* at *1. The plaintiff brought § 1983 claims for unlawful arrest and excessive force, and sought to admit the text of the judge's decision dismissing his charge. *Id.* The district court found that the

10

judge's ruling was relevant, but was inadmissible hearsay and unduly prejudicial due to the risk that a jury would simply adopt the judge's decision on probable cause. *Id.* at *3. However, the court also found that complete exclusion of the dismissal decision would be prejudicial to the plaintiff's case. *Id.* The court reasoned that if the jury hears evidence of the plaintiff's arrest and the charge against him, it would be unfairly prejudicial to the plaintiff not to also "provide the jury with an accurate procedural account of the disposition of the charge." *Id.* "[E]xcluding dismissal evidence allows the jury to speculate that [the plaintiff] was guilty . . ., an assumption that directly prejudices" the plaintiff's claims. *Id.* Therefore, the court concluded that the "the jury [must] hear an accurate, although brief, account of the[] disposition" of the criminal charge. *Id.*

That is also how other district courts in this circuit have handled this issue at trial. *See Burgess v. Baltimore Police Dep't*, 300 F. Supp. 3d 696, 701 (D. Md. 2018) (describing testimony admitted at trial that plaintiff's conviction was vacated when the Court granted his petition for a writ of actual innocence), *aff'd sub nom Burgess v. Goldstein*, --- F.3d ----, 2021 WL 1936046 (4th Cir. May 14, 2021).

The same result is required here. The jury in this case will undoubtedly learn that Plaintiff was convicted of the Washington murders in 1995, meaning he was found guilty beyond a reasonable doubt. Completely excluding evidence that Plaintiff's convictions were overturned would leave the jury with an unbalanced view on the question of Plaintiff's guilt or innocence. Simply informing the jury that Plaintiff's convictions were overturned in 2016 would be inadequate as well because the jury could well speculate the

11

convictions were overturned on a mere technicality when, in fact, they were overturned based on evidence of Plaintiff's innocence—namely, favorable and exculpatory DNA testing. The only fair outcome is that the jury be provided with a brief summary of the Order Granting the DNA Motion.

## **CONCLUSION**

For the foregoing reasons, the Court should (1) admit Plaintiff's Pardon of Innocence and/or take judicial notice of the Pardon; and (2) direct that the jury be presented with a summary of the Order Granting the DNA Motion.

Dated: May 21, 2021.

PATTERSON HARKAVY LLP

/s/ Narendra K. Ghosh
Narendra K. Ghosh, NC Bar No. 37649
nghosh@pathlaw.com
Burton Craige, NC Bar No. 9180
bcraige@pathlaw.com
Paul E. Smith, NC Bar No. 45014
psmith@pathlaw.com
Bradley J. Bannon, NC Bar No. 24106
bbannon@pathlaw.com
100 Europa Dr., Suite 420
Chapel Hill, North Carolina 27517
(919) 942-5200


NEUFELD SCHECK & BRUSTIN, LLP

/s/ Anna Benvenutti Hoffmann
Barry Scheck, NY Bar No. 1634765
barry@nsbcivilrights.com
Nick Brustin, NY Bar No. 2844405
nick@nsbcivilrights.com

12

Anna Benvenutti Hoffmann, NY No. 4412011
anna@nsbcivilrights.com
Amelia Green, NY Bar No. 5428412
amelia@nsbcivilrights.com
Katie McCarthy, NY Bar No. 5583141
99 Hudson Street, 8th Floor
New York, NY 10013
(212) 965-9081

*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), counsel for the Plaintiff certifies that the foregoing brief is less than 6,250 words (excluding caption, signature lines, this certificate, and certificate of service) as reported by the word-processing software.

Dated: May 21, 2021.

/s/ Anna Benvenutti Hoffmann

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered use of record.

Dated: May 21, 2021.

/s/ Jahne Brown